**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JACK ERVAN III,

                    Plaintiff,

                v.

AXOS BANK *et al.*,

                    Defendants.

No. 25-cv-05180

Judge John F. Kness

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on separate Rule 12(b)(6) motions to dismiss filed by Defendants TransUnion LLC (joined by Experian Information Solutions, Inc.) and Axos Bank. For the reasons that follow, the motions are granted, and the complaint is dismissed without prejudice. Plaintiff, who is proceeding pro se, is given leave to replead should he believe he can plead a viable claim consistent with Rule 11 of the Federal Rules of Civil Procedure.

## I.    BACKGROUND

Plaintiff Jack Ervan III, proceeding pro se, brings this action arising from an auto loan he obtained from Defendant Axos Bank and the subsequent reporting of that loan by Defendants Axos, Experian Information Solutions, Inc., and TransUnion LLC. (Dkt. 1.) According to the Complaint and the exhibits attached to it, Plaintiff obtained an auto loan from Axos on May 5, 2021 and made monthly payments from June 2021 until late June 2022. (Dkt. 1 ¶ 7.) At some point in mid-2022, Plaintiff

experienced financial hardship and contacted Axos to discuss his inability to continue paying. (*Id.* ¶¶ 8–9, 11, 13.) Plaintiff alleges that, on June 15, 2022, he "formally voluntarily surrendered" the vehicle to Axos and, in reliance on that supposed surrender and his belief that he no longer retained ownership or liability, he cancelled the vehicle's insurance. (*Id.*) The documents appended to the Complaint, however, show that Axos did not actually schedule or complete a repossession of the vehicle and that Plaintiff continued to possess the car.

After a payment made on June 24, 2022—apparently by Plaintiff's wife, Reba Ervan—the account was brought current, but Plaintiff made no further payments thereafter. (*Id.* ¶ 11.) On July 7, 2022, a tow company notified Axos that it had possession of the vehicle, which had been totaled in an accident. (Dkt. 1 at 12.) No insurance proceeds were paid, because coverage had previously been cancelled for nonpayment. (*Id.*) Despite Plaintiff's default and the uninsured loss of the collateral, Axos reported the account as seriously delinquent (*i.e.*, 120+ days late), and the consumer reporting agencies, including TransUnion and Experian, displayed this information in Plaintiff's credit files. (*Id.* at 5.) Plaintiff alleges that these reports caused him to be denied a personal loan from Navy Federal Credit Union and an auto loan. (*Id.* ¶¶ 19, 21.)

Plaintiff asserts multiple causes of action based on this sequence of events. Against Axos, in Count I, he brings a claim under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b), alleging that Axos failed to conduct a reasonable investigation after notice of a dispute. (Dkt. 1 ¶¶ 25–26.) Against Experian and

TransUnion, in Count II, he asserts FCRA claims under 15 U.S.C. §§ 1681s-2(b) and 1681i, contending that they failed to reasonably reinvestigate and correct inaccurate reporting of the Axos account. (*Id.* ¶¶ 27–29.) In Count III, he asserts claims against Axos under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692e and 1692g, alleging that Axos engaged in false or misleading collection practices and failed to provide required validation notices. (*Id.* ¶¶ 30–31.) In Count IV, he asserts a claim styled "Wrongful Interference with Borrower Rights (UCC and Consumer Law)," again directed at Axos, arguing that Axos improperly reversed his voluntary surrender by accepting a third-party payment and failed to issue a Form 1099-C for cancellation of debt. (*Id.* ¶¶ 32–35.) Defendants TransUnion and Experian move under Federal Rule of Civil Procedure 12(b)(6) to dismiss the FCRA claims asserted against it in Count II (Dkt. 18; Dkt. 33), and Defendant Axos separately moves to dismiss Counts I, III, and IV under Rule 12(b)(6). (Dkt. 40.)

## II.    STANDARD OF REVIEW

Under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the factual content permits the reasonable inference that the defendant is liable for the misconduct alleged; the standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. As the Seventh Circuit has emphasized, a plaintiff need not "lay out every element or ingredient" of a claim to survive a Rule 12(b)(6) motion. *Thomas v. JBS*

3

*Green Bay, Inc.*, 120 F.4th 1335, 1336 (7th Cir. 2024). Rather, all the complaint need do is "state a grievance. Details and proofs come later." *Id.* at 1338.

At this stage, the Court must accept all well-pleaded factual allegations as true and draw reasonable inferences in Plaintiff's favor, but it is not bound by legal conclusions couched as factual allegations. *Id.*; *Zahn v. N. Am. Power & Gas, LLC*, 815 F.3d 1082, 1087 (7th Cir. 2016). Because Plaintiff proceeds pro se, the Court construes his pleadings liberally, but even pro se litigants must comply with the Federal Rules of Civil Procedure and provide defendants with fair notice of the claims and the grounds upon which they rest. *See Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998).

## III. DISCUSSION

This Opinion begins by discussing why Plaintiff's claims (Count II) against the CRAs (Experian and TransUnion) fail to state a claim. In short, Plaintiff has failed to plead that Experian or TransUnion made any factual (rather than legal) errors in their reporting. This Opinion then discusses why Plaintiff's remaining claims (Count I, III, IV) against Axos Bank similarly fail because Plaintiff has not pleaded that Axos provided any factual inaccuracies to Experian or TransUnion.

### A. In Count II, Plaintiff Fails to Plead a Factual Reporting Inaccuracy Against Experian and TransUnion

Plaintiff's FCRA claims against TransUnion and Experian arise under 15 U.S.C. §§ 1681e(b) and 1681i. Section 1681e(b) requires a consumer reporting agency ("CRA") to "follow reasonable procedures to assure maximum possible accuracy" of information in consumer reports, and § 1681i requires a CRA to conduct a reasonable

4

reinvestigation when a consumer disputes the completeness or accuracy of information in his file. Courts in this circuit have consistently held that both provisions require, at a minimum, a showing that the information reported was inaccurate; without an underlying inaccuracy, the plaintiff cannot prevail. *See Kuehling v. Trans Union*, LLC, 137 F. App'x 904, 908 (7th Cir. 2005) ("Without evidence of some inaccuracy in the Trans Union report or reinvestigation, [plaintiff] cannot establish that Trans Union violated the FCRA—either § 1681e(b) or § 1681i(a)(1)(A)."); *Denan v. Trans Union LLC*, 959 F.3d 290, 296–98 (7th Cir. 2020); *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004); *Soyinka v. Equifax Info. Servs., LLC*, 486 F. Supp. 3d 1232 (N.D. Ill. 2020). That inaccuracy may be an affirmative falsehood or a materially misleading presentation of data, but there must be some factual content that is wrong or incomplete in an objectively verifiable way.

Plaintiff does not plausibly allege that TransUnion or Experian reported any fact about the Axos account inaccurately. As the Complaint and its exhibits show, Plaintiff entered into an auto loan with Axos, made payments for roughly a year, stopped making payments after June 2022, and the vehicle was later totaled in an accident while uninsured. (Dkt. 1 ¶¶ 7–8, 13–14.) Axos's November 29, 2024 letter to Plaintiff (attached to the Complaint) states that Plaintiff contacted Axos on June 1, 2022 to say he could not make payments and to inquire about transferring the loan to his wife's name; after ninety days of missed payments, Axos began reporting the account as past due; no insurance proceeds were received following the accident because coverage had been cancelled for non-payment; and after reviewing the

5

origination documents, identification, payment history, and contact history, Axos concluded the loan was valid, the reporting accurate, and there was no FCRA violation. (*Id.* at 7.)

Plaintiff does not contest these underlying facts. Plaintiff does not allege that the balance, dates, delinquency status, or ownership of the account reported by TransUnion and Experian were wrong. Nor does Plaintiff contend that either TransUnion or Experian reported an Axos account that did not belong to him. Instead, Plaintiff argues that, because he attempted to voluntarily surrender the vehicle, cancelled insurance in reliance on that surrender, and his wife later made a payment, Axos should have treated the debt as cancelled and should not have continued to report the account as delinquent. (*Id.* ¶¶ 14–17.) In other words, Plaintiff's grievance is that the debt should not exist or be legally enforceable, not that TransUnion or Experian got the factual numbers or status wrong.

This sort of challenge falls outside the FCRA's concept of "inaccuracy" for a CRA. In *Denan*, the Seventh Circuit held that consumer reporting agencies are not obligated to determine the legal validity of debts and that consumers may not use FCRA claims against CRAs to collaterally attack the enforceability of underlying obligations. 959 F.3d at 295–97. *Denan* draws a clear line between factual disputes— such as whether an account exists, whether a balance is correct, or whether a judgment has been vacated—and legal disputes, such as whether a debt is usurious, time-barred, void, or otherwise unenforceable under state or federal law. *Id.* at 296–98. CRAs must reinvestigate and correct factual inaccuracies that are "objectively

6

and readily verifiable," but they are neither equipped nor required to undertake the kind of legal analysis courts perform to adjudicate defenses to liability. *Id.*

Plaintiff's allegations here fall on the legal side of that line of demarcation: they require determining whether Plaintiff's attempted voluntary surrender, the subsequent payment by his wife, the cancellation of insurance, and Axos's conduct under the loan agreement extinguished or altered his liability. (Dkt. 1 ¶¶ 14–17, 27–29.) These are questions of contract law and creditor rights, not factual misreporting. Because Plaintiff has not alleged that TransUnion reported objectively false or materially misleading factual information about his account, he fails to state a claim under § 1681e(b) or § 1681i.

**B.      Plaintiff's Remaining Claims Against Axos Bank Fail**

> *1.      Count I Fails Because Plaintiff Does Not Plead Any Statutory Triggers Against Defendant Axos Bank*

The FCRA claim against Defendant Axos in Count I is distinct because Axos is not a CRA but a furnisher of information to CRAs. Furnisher duties are governed by 15 U.S.C. § 1681s-2. Subsection (a) addresses accuracy obligations and is enforceable only by government agencies, not private plaintiffs. Subsection (b) imposes duties on furnishers to investigate and respond when they receive notice of a dispute from a consumer reporting agency, and that subsection is privately enforceable. A furnisher's obligations under § 1681s-2(b) are triggered only when (1) the consumer notifies a CRA of a dispute, and (2) the CRA, in turn, notifies the furnisher of that dispute. Notice from the consumer directly to the furnisher does not activate § 1681s-2(b). *Johnson v. Carrington Mortg. Servs.*, 638 F. App'x 523, 525 (7th Cir. 2016). Once

7

properly triggered, the furnisher must investigate, review relevant information provided by the CRA, report the results back to the CRA, and correct any inaccuracies. 15 U.S.C. § 1681s-2(b)(1).

As framed in Axos's motion, Plaintiff's Complaint does not clearly allege these statutory triggers. (Dkt. 40 at 4.) Plaintiff focuses primarily on his direct communications with Axos and his disagreement with Axos's legal position regarding his liability after the attempted surrender and accident. (Dkt. 1 ¶¶ 7–24.) Even if Plaintiff could amend his pleading to allege that he disputed Axos's supplied information with a CRA and that the CRA provided notice to Axos, any § 1681s-2(b) claim would likely still fail for the same reason that undermines his claims against TransUnion and Experian: the absence of any factual inaccuracy. Section 1681s-2(b) does not convert furnishers into arbiters of the legal enforceability of debts. Where, as here, the consumer concedes the existence of the account and default but asserts that the creditor should, for legal or equitable reasons, treat the debt as forgiven or cancelled, the furnisher is not obligated under the FCRA to adopt the consumer's legal theory. *See Denan*, 959 F.3d at 295–97 (holding that a CRA need not—and by implication a furnisher need not—resolve legal challenges to the validity of the debt). Plaintiff has not pointed to any objectively false piece of information that Axos furnished to the CRAs. Count I must therefore be dismissed. Even though it is doubtful that Plaintiff could plead facts showing that Axos could be liable, the Court will, in view of Plaintiff's pro se status, allow him leave to submit an amended complaint if he believes he can plead a plausible claim.

### 2. Count III Fails Because Axos Bank Is Not A Debt Collector Under the FDCPA

Plaintiff's FDCPA claim against Axos in Count III fails for more fundamental reasons. The FDCPA regulates the conduct of "debt collectors," not creditors collecting their own debts in their own names. 15 U.S.C. § 1692a(6). A "debt collector" is defined as any person whose principal purpose is the collection of debts, or who regularly collects debts "owed or due another," as well as certain creditors who use a name other than their own to suggest that a third party is collecting. *Id.* By contrast, an original lender collecting its own loan under its own name is generally considered a "creditor," not a "debt collector," and falls outside the FDCPA's coverage. *Smith v. Cont'l Cmty. Bank & Tr. Co.*, No. 01 C 8263, 2002 WL 1364063, at *2 (N.D. Ill. June 24, 2002) (dismissing FDCPA claim where bank was collecting its own loan) (citing *Aubert v. American Gen. Fin., Inc.*, 137 F.3d 976, 978 (7th Cir.1998) (stating that creditors' "debt collection activities are not subject to the Act unless they collect under a name other than their own")).

Plaintiff identifies Axos as the originating bank on Plaintiff's auto loan and does not allege that Axos's principal business is third-party debt collection, that it was collecting debts owed to someone else, or that it used a different name in an attempt to disguise itself as a third-party collector. (Dkt. 1 ¶¶ 7–24.) On these facts as alleged, therefore, Axos is a creditor collecting its own debt—not a "debt collector" for purposes of the FDCPA. Because the FDCPA does not apply to Axos in this context, Count III fails as a matter of law and amendment would be futile as to this statutory theory.

9

Even if Axos could somehow be deemed a "debt collector," Plaintiff has not alleged facts that would establish a violation of either § 1692g or § 1692e. Section 1692g requires that, within five days of the initial communication with a consumer in connection with the collection of any debt, a debt collector must send a written notice containing the amount of the debt, the name of the creditor, and various statements regarding the consumer's right to dispute the debt and obtain verification. 15 U.S.C. § 1692g(a). Plaintiff does not allege that Axos failed to provide such a notice within the statutory time frame or that any notice it did provide omitted required content. Indeed, Plaintiff's Complaint does not identify any particular communication from Axos that could serve as an "initial communication" for § 1692g purposes.

Section 1692e likewise prohibits the use of false, deceptive, or misleading representations "in connection with the collection of any debt." 15 U.S.C. § 1692e. Plaintiff does not point to any specific letter, telephone call, or other communication from Axos that was allegedly false or misleading, nor does he describe how any such communication misrepresented the character, amount, or legal status of the debt. In fact, much of his grievance is that Axos reported the debt as delinquent to CRAs, which, as an original creditor, it is generally permitted to do. Without factual allegations identifying a qualifying collection communication and explaining how it violated the FDCPA, Count III cannot proceed. Because Axos is not a "debt collector," and because Plaintiff has not alleged a plausible claim under § 1692g or § 1692e, Count III must be dismissed.

10

### 3. Count IV Identifies No Recognized Cause of Action

Count IV, labeled "Wrongful Interference with Borrower Rights (UCC and Consumer Law)," also fails to state a claim. The original complaint did not identify a specific statutory provision under the Uniform Commercial Code or any consumer protection statute, nor did it articulate the elements of any recognized common-law cause of action, such as breach of contract, conversion, or tortious interference. After Defendant Axos pointed this out in their response brief (Dkt. 41), Plaintiff stated that he meant to assert claims for (1) breach of the implied covenant of good faith and fair dealing under UCC Section 1-304; (2) tortious interference with "Plaintiff's finalized surrender rights"; and (3) conversion. (Dkt. 42 at 4–5.) Each of these assertions fails.

To begin, Plaintiff's claims for breach of an implied covenant of good faith and fair dealing and tortious interference would require first establishing the existence and terms of a contract. Plaintiff's allegations do not plausibly support any such showing. Plaintiff does not allege that Defendant Axos actually accepted the surrender by taking possession of the car or agreeing, in writing or otherwise, that the surrender was final. On the contrary, Plaintiff's own pleadings and exhibits indicate that Defendant Axos never picked up the vehicle before it was totaled. (*Id.* ¶ 10–13.) Without allegations that Defendant Axos accepted surrender and thus modified the loan obligations (the terms of which remain unknown and unpled), there is no basis to claim that Axos "reversed" a completed transaction or otherwise violated any contractual rights at all. Moreover, even if Plaintiff did bring forth contractual allegations, tortious interference applies against a third-party for improper

11

interference with the contractual rights of another. *See, e.g. Stofer v. First Nat'l Bank*, 212 Ill. App. 3d 530, 543 (5th Dist. 1991). It does not apply to the contracting parties.

Plaintiff's allegations also fail to show any plausible conversion claim. To state a claim for conversion under Illinois law, a plaintiff must establish (1) a right to the property; (2) an absolute and unconditional right to immediate possession of the property; (3) a demand for possession; and (4) the defendant's unauthorized and wrongful assumption of control, dominion, or ownership over the property. *See Cirrincione v. Johnson*, 184 Ill. 2d 109, 114, 703 N.E.2d 67, 70 (1998); *Toll Processing Servs., LLC v. Kastalon, Inc.*, 880 F.3d 820, 826 (7th Cir. 2018). Plaintiff's allegations do not plausibly suggest he could meet that legal standard.

Plaintiff's allegations establish for present purposes that Axos held an auto loan over the car at issue, Axos never attempted to collect the car, and Plaintiff's wife destroyed it. (Dkt. 1 ¶ 1, 10–12.) Plaintiff thus cannot show an absolute and unconditional right to the car. Even if Plaintiff could establish sufficient rights in the car, Plaintiff has not pleaded that Axos exerted wrongful control over it. Instead, Plaintiff admits that his wife destroyed his car. (*Id.* ¶ 11.) As such, Plaintiff has failed to state a plausible conversion claim. *Kastalon*, 880 F.3d at 826. Count IV must therefore be dismissed.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss are granted, and the Complaint is dismissed without prejudice. By separate order, Plaintiff will be given leave to submit an amended complaint.

12

SO ORDERED in No. 25-cv-05180.

Date: March 25, 2026

JOHN F. KNESS
United States District Judge